UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MOATS, | ) | Case No. 1:11CV258 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MAGGIE BEIGHTLER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

Petitioner Charles Moats ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1.  He challenges the constitutionality of his Cuyahoga County, Ohio Court of Common Pleas convictions for operating a vehicle under the influence of alcohol or drugs in violation of Ohio Revised Code ("ORC") § 4511.19(A)(1)(a). *Id.*

On August 19, 2011, Respondent Maggie Beightler Warden of Marion Correctional Institution in Marion, Ohio ("Respondent"), filed an answer/return of writ.  ECF Dkt. #9.  On September 22, 2011, Petitioner filed a traverse.  ECF Dkt. #10.  On August 10, 2012, Respondent filed an amended return of writ.  ECF Dkt. #12.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

## I.   SYNOPSIS OF THE FACTS

The Eighth Appellate District Court of Appeals of Ohio set forth the facts of this case on direct appeal.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  The Eighth District Court of Appeals of Ohio set forth the following:

According to the facts, David Zaffino, a clerk at a Speedway store located in Middleburg Heights, testified that he saw Moats in his store on December 6, 2007, at approximately 3 a.m. Zaffino testified that Moats and another man pulled up to a gas pump and entered the store to purchase beer. The men appeared to be intoxicated. Zaffino told the men he could not sell them beer because of the late hour. One of the men re-entered the store and asked again to buy beer and Zaffino refused again. Zaffino described the two individuals as "unbalanced" and "red in the face." Zaffino also testified that he has worked many third shifts and has seen many intoxicated individuals. Zaffino also testified that the behavior of Moats and his passenger worried the other customers to the point where they began to ask him to do something about the two men. Zaffino then called the police.

Middleburg Heights police officers arrived on the scene just as the men were getting ready to drive away. Patrolman Alameda testified that he observed Moats drive his vehicle across three lanes of traffic before going back to the curb lane. Patrolman Alameda activated his overhead lights and pulled the vehicle over into a LubeStop parking lot. When Moats lowered his window, Patrolman Alameda immediately noticed a strong odor of alcohol. In addition to the odor of alcohol, Moats was slow in retrieving his identification for Patrolman Alameda and spoke with a "slurring of speech, almost mush mouth, thick tongue type of speech..."[1]

> 1    Tr. vol. 2, p. 212.

Because of the slurred speech, delayed reactions, and strong odor of alcohol, Patrolman Alameda removed Moats from the vehicle in order to conduct field sobriety tests. Moats failed the field sobriety tests and was arrested. Moats was taken to the police station so that a blood alcohol (breath test) could be administered. At the station while attempting to administer the test, Patrolman Meyerholtz, who is certified to administer the blood alcohol test, observed Moats to be sleepy and lethargic, describing him as "not really coherent."[2] Moats, ultimately, refused to take the test. Finally, Detective Clift of the Middleburg Heights Police Department testified that when he was transporting Moats to Berea Municipal Court later on the morning of December 6, 2007, Moats did not know where he was or how he ended up there.

> 2    Tr. vol. 1, p. 171.

ECF Dkt. #9-1 at 152-154[1].

## II.    **PROCEDURAL HISTORY**

### A.    **State Trial Court**

In its January 2007 session, the Cuyahoga County, Ohio Grand Jury issued an indictment charging Petitioner with two counts of driving under the influence of alcohol and/or a drug of abuse in violation of ORC § 4511.19(A)(1)(a), with forfeiture and repeat violator specifications

---

[1]  Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

of five or more equivalent offenses.  ECF Dkt. #9-1 at 80-82.  Petitioner, with counsel, entered a not guilty plea to the charges.  *Id*. at 83.

On May 6, 2008, the State filed a motion to compel Petitioner to provide copies of all documents and medical records that he intended to use at trial and at the deposition of Dr. Berenholz, an expert witness that Petitioner apparently planned to call at trial.  ECF Dkt. #9-1 at 84.  In its motion, the State indicated that counsel for Petitioner filed a motion on the date of trial, April 16, 2008, moving to continue the trial in order to obtain testimony from a witness through deposition.  *Id.* at 85.  The State noted that the court granted Petitioner's motion to continue and rescheduled the trial for May 12, 2008.  *Id*.  The State also indicated that Petitioner did not file his motion pursuant to Rule 15 of the Ohio Rules of Criminal Procedure ("Ohio Criminal Rule 15") to take the deposition of the unavailable witness, Dr. Berenholz, until April 28, 2008.  *Id.* The State explained that Petitioner had failed to provide it with any discovery, despite a discovery demand.  *Id*.  The State also indicated that Petitioner failed to provide a witness list or the medical records of Dr. Berenholz.  *Id*.

On the same date, the State also filed a motion for reconsideration, requesting that the trial court reconsider its granting of Petitioner's motion to take the deposition of Dr. Berenholz as an unavailable witness.  ECF Dkt. #9-1 at 87.  The State pointed out that Dr. Berenholz was never subpoenaed and Petitioner had merely stated that Dr. Berenholz was unavailable because it was difficult for him to come to Cleveland, Ohio to testify.  *Id*. at 88.  The State explained that it disagreed with defense counsel's assertion that it would be easier to take Dr. Berenholz's deposition in Warren, Ohio, one and one-half hours away from Cleveland, Ohio because while the time of a doctor was valuable, the prosecutor's office would incur a greater hardship since replacement prosecutors would have to cover the traveling prosecutors' dockets in Cuyahoga County Common Pleas Court for the entire day since the deposition was to take place in the middle of the day.  *Id*. at 88-89.  The State also explained that the biggest hurdle to the deposition was that Petitioner had still failed to provide any documents relating to the testimony of Dr. Berenholz, or a witness list or the discovery that Petitioner intended to use at trial.  *Id.* at 89.

-3-

On May 8, 2008, the trial court granted the State's motion to compel discovery and its motion for the court to reconsider the granting of Petitioner's Ohio Rule 15 motion.  ECF Dkt. #9-1 at 91-92.

Petitioner subsequently proceeded to a jury trial and prior to seating the jury, Petitioner's counsel moved for a two-week continuance which would allow the expert witness to be available to testify.  ECF Dkt. #9-2 at 325-326.  The trial court denied the motion for continuance.  *Id*. at 327-328.  The case proceeded to trial and the jury convicted Petitioner on both counts of driving under the influence, as well as the forfeiture specifications and the repeat violator specifications. ECF Dkt. #9-1 at 93.  On May 15, 2008, the trial court sentenced Petitioner to four years in prison, with three years of post-release control and a lifetime driver's license suspension.  *Id.*

**B**.     **Direct Appeal**

On June 16, 2008, Petitioner, through counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eighth District.  ECF Dkt. #9-1 at 94.  On November 6, 2008, Petitioner, through counsel, filed a brief in support of his appeal, raising the following assignments of error:

> I.     THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 15 MOTION FOR DEPOSITION OF HIS EXPERT FOR USE AT TRIAL.
>
> II.    APPELLANT'S CONVICTIONS MUST BE REVERSED AS HE HAD INEFFECTIVE ASSISTANCE OF LEGAL COUNSEL AT TRIAL.
>
> III.   THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL WHEN THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE ELEMENTS OF OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL.
>
> IV.    THE APPELLANT'S CONVICTIONS FOR OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OR[sic] ALCOHOL WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
> V.     THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON THE OFFENSE OF REFUSAL TO SUBMIT TO CHEMICAL TESTING WHERE THAT OFFENSE WAS NOT CHARGED IN THE INDICTMENT.

ECF Dkt. #9-1 at 110.

On July 6, 2009, the Eighth District Court of Appeals denied the appeal and affirmed the trial court's judgment of conviction. ECF Dkt. #9-1 at 150.

### C. **Ohio Appellate Rule 26(B) Application**

On September 2, 2009, Petitioner pro se filed an application to reopen pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure asserting that the trial court erred when it denied his Ohio Criminal Rule 15 motion to take the deposition of the unavailable witness Dr. Berenholz. ECF Dkt. #9-1 at 171. He also asserted that his trial counsel was ineffective because counsel failed to persuade the court to allow Dr. Berenholz's testimony and because counsel never raised the issue of allied offenses of similar import because he was "double charged" for the same crime. *Id*. at 171-172. He further mentioned the ineffectiveness of appellate counsel and the proper test for evaluating an ineffective assistance of counsel claim. *Id.* at 176. He appears to assert that appellate counsel was ineffective in failing to raise the trial court's error in determining the Ohio Criminal Rule 15 motion, and in failing to raise trial counsel's ineffectiveness in failing to persuade the trial court on the Ohio Criminal Rule 15 motion and in failing to raise allied offenses of similar import. *Id*. at 176-177.

On October 7, 2009, the Eighth District Court of Appeals denied Petitioner's application for reopening. ECF Dkt. #9-1 at 188-193.

### D. **Supreme Court of Ohio**

Petitioner did not file a timely appeal to the Supreme Court of Ohio from the appellate court's decision on his direct appeal. Rather, on September 11, 2009, Petitioner filed a pro se motion to file a delayed appeal and a pro se notice of appeal to the Supreme Court of Ohio. ECF Dkt. #9-1 at 194-208. Petitioner asserted that he was unable to file a timely appeal because no stamped Journal Entry appeared on the copy of the appellate court opinion that he received on his direct appeal. *Id*. at 199. He further alleged delays in receiving notification of when his appeal was due to the Supreme Court of Ohio and delays in the prison mailing system. *Id*.

The Supreme Court of Ohio granted Petitioner's motion for delayed appeal and Petitioner presented the following propositions of law in his memorandum in support of jurisdiction:

-5-

1.     The Appellant raised assignment of error No. 1 that the Trial Court erred in denying Appellant's criminal rule 15 motion for deposition on his expert for use at trial as part of his due process of law.  Under Ohio Criminal Rule 15, a defendant may request the deposition of a witness for use at trial.

2.     In Appellant's assignment of error 2, Appellant's[sic] raised ineffective assistance of legal counsel where the trial court excluded his doctor's testimony, therefore Appellant's convictions must be reversed.

3     On assignment of error 3, the Appellant raised that the trial court erred in denying Appellant's criminal rule 29 motion for acquittal when there was insufficient evidence to prove the elements of operating a motor vehicle while under the influence of alcohol.

4.     Appellant raised assignment of error in number four: The Appellant[sic] convictions for operating a Motor Vehicle while under the influence or[sic] alcohol where[sic] where against the manifest weight of the evidence.

5.     Appellant's last assignment of error in number five: was raised that the trial court erred in instructing the jury on the offense of refusal to submit to chemical testing where that offense was not charged in the indictment.

ECF Dkt. #9-1 at 234-242.  On February 10, 2010, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. ECF Dkt. #9-1 at 266.

      **E**.    **Petition to Vacate or Set Aside Sentence**

On November 17, 2010, Petitioner filed a petition to vacate or set aside his judgment of conviction or sentence in the trial court.  ECF Dkt. #9-1 at 267.  On November 24, 2010, the trial court summarily denied Petitioner's petition to vacate or set aside his conviction or sentence.  *Id*. at 278.  On December 13, 2010, Petitioner filed a motion for reconsideration in the trial court and on December 17, 2010, the trial court summarily denied the motion.  *Id*. at 279-282.

      **F**.    **Motion for Judicial Release**

On July 20, 2009 and July 9, 2010, Petitioner filed motions for judicial release in the trial court.  ECF Dkt. #9-1 at 283, 293.  The trial court denied both motions.  *Id*. at 305, 318.

**III.**    **28 U.S.C. § 2254 Petition**

On February 1, 2011, Petitioner pro se executed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

GROUND ONE:

The trial court erred in denying Appellant's criminal rule 15 motion for deposition of his expert for use at trial. Appellant's convictions must be reversed as he had ineffective assistance of legal counsel at trial where the court excluded his doctor's testimony. The trial court erred in denying Appellant's criminal rule 29 motion for acquittal when there [sic]as insufficient evidence to prove the elements of operating a motor vehicle while under the influence of alcohol. The Appellant's convictions for operating a motor vehicle while under the influence or[sic] alcohol were against the manifest weight of the evidence. The trial court erred in instructing the jury on the offense of refusal to submit to chemical testing where that offense was no[sic] charged in the indictment.

GROUND THREE[2]:

The trial court erred in denying Appellant's criminal rule 29 motion for acquittal when there was insufficient evidence to prove the elements of operating a motor vehicle while under the influence of alcohol.

GROUND FOUR:

The Appellant's convictions for operating a motor vehicle while under the influence of alcohol were against the manifest weight of the evidence.

*Id.* at 5-10. On August 19, 2011, Respondent filed an answer/return of writ. ECF Dkt. #9. On September 22, 2011, Petitioner filed a traverse to the return of writ. ECF Dkt. #10. On August 10, 2012, with permission of the Court, Respondent filed an amended answer/return of writ. ECF Dkt. #s 11, 12.

**IV.    PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

---

[2] Petitioner apparently skipped Ground Two as the Ground Two portion and supporting facts is left blank. ECF Dkt. #1 at 7.

A.    **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not currently at issue in this case. ECF Dkt. #12 at 830-832.

B.    **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

-8-

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490

-9-

U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V. **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

-10-

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.  Decisions of lower federal courts may not be considered.

B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.  The state court decision may be overturned only if:

  1.  It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

  2.  the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

  3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

  4.  the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it

-11-

should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

-12-

## VI.   ANALYSIS

### A.   Procedural Default--Jury Instruction Claim in Ground for Relief Number 1

In Ground for Relief Number 1, Petitioner asserts, *inter alia*, that the trial court erred in instructing the jury on the offense of his refusal to submit to chemical testing when that offense was not charged in the indictment.  ECF Dkt. #1 at 5.  Respondent contends that Petitioner has procedurally defaulted this claim because he failed to object to the instruction at trial and therefore waived any complaint he had about the instruction.  ECF Dkt. #12 at 834.

The undersigned recommends that the Court find that Petitioner has procedurally defaulted this part of his Ground for Relief.  Petitioner, through counsel, raised this claim in the fifth assignment of error in his appeal to the Eighth District Court of Appeals.  ECF Dkt. #9-1 at 110.  The Eighth District Court of Appeals addressed this claim, finding that it only had to review the claim under a plain error analysis:

> Moats argues in his fifth and final assignment of error that the lower court erred in instructing the jury on the offense of refusal to submit to chemical testing where that offense was not charged in the indictment.
>
> In the case at bar, Moats initially objected to the jury instruction.  The trial court then agreed to, at Moat's request, insert the phrase, "The Defendant claims he was never offered such a test," after the first sentence in the jury instruction.  Moats did not object to the instruction after the phrase he requested was added.  "Absent plain error, the failure to object to improprieties in the instructions, as required by Crim. R. 30 is a waiver of the issue on appeal."  *State v. Underwood* (1983), 3 Ohio St.3d 12, 13.

ECF Dkt. #9-1 at 167.  The appellate court therefore undertook only a plain error review and found that the lower court did not abuse its discretion in its jury instruction.  *Id.* at 168.

The Court should find that Petitioner has procedurally defaulted this claim.  The appellate court cited to Rule 30 of the Ohio Rules of Criminal Procedure, indicating that Petitioner violated this rule by failing to object to the jury instructions after the court modified them to include the phrase that Petitioner requested the court to add.  ECF Dkt. #9-1 at 167.  "[I]n *Engle v. Isaac*, 456 U.S. 107, 124-129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Supreme Court specifically found

-13-

that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000).  Moreover, the Sixth Circuit held in *Mitchell* that a court's plain error review as an alternative holding does not revive a federal habeas corpus claim.  *Id.* at 877 ("It is enough that the court specifically held that the claims were waived; the court's alternative holding that there was no plain error 'does not require us to disregard the state court's finding of procedural bar.' *Coe [v. Bell]*, 161 F.3d [320], at 330 [(6th Cir. 1998)]."

In order to avoid the procedural default of his jury instruction claim, Petitioner must present cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that the failure of this Court to consider the claim will result in a fundamental miscarriage of justice. Petitioner has failed to make any such assertions.  Accordingly, the Court should find that Petitioner has procedurally defaulted his jury instruction claim presented in Ground for Relief Number One.

Even if not procedurally defaulted, Petitioner fails to show that the jury instruction, even if erroneous, rendered his entire trial fundamentally unfair.  An error in jury instructions can warrant federal habeas corpus relief, but they "must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.  The burden is even greater than that required to demonstrate plain error on appeal." *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001), quoting *Scott*, 209 F.3d at 882.  In the instant case, the Ohio appellate court found that the jury instruction that the lower court used was identical to the jury instructions deemed appropriate in state caselaw and the only modification made to that instruction was to add the phrase that Petitioner had requested.  ECF Dkt. #9-1 at 168.  The Ohio appellate court found that plain error did not occur and Petitioner here presents inadequate evidence showing that the jury instruction was erroneous or fundamentally unfair.

> **B.**     **Noncognizability-Manifest Weight of the Evidence Claims in Grounds for Relief Number 1 and 4**

In Ground for Relief Number 1 and in Ground for Relief Number 4, Petitioner contends that his convictions for operating a motor vehicle under the influence of alcohol were against the manifest

-14-

weight of the evidence. ECF Dkt. #1 at 5, 10. The undersigned recommends that the Court dismiss these claims because a claim that a conviction is against the manifest weight of the evidence is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006). Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). Accordingly, the manifest weight of the evidence claims in Grounds for Relief Numbers 1 and 4 lack cognizability and should be dismissed with prejudice.

### C. Merits

#### 1. Other Issues Presented in Ground for Relief Number 1

##### a. Expert Deposition

Petitioner contends that the trial court erred in denying his motion for deposition of an expert witness under Rule 15 of the Ohio Rules of Criminal Procedure. ECF Dkt. #1 at 5. Respondent contends that this claim is not cognizable and is alternatively without merit. ECF Dkt. #12 at 837.

The trial court had originally granted Petitioner's Ohio Criminal Rule 15 motion permitting him to take and use at trial the deposition of his expert witness, Dr. Berenholz, because Dr. Berenholz was unavailable for trial. ECF Dkt. #9-1 at 88. However, the State filed a motion for reconsideration, requesting that the trial court reconsider its decision allowing the deposition to go forward for a number of reasons. *Id*. at 88-90. The State explained that trial was scheduled for April 16, 2008 at 9:00 a.m. when counsel for Petitioner at that date and time filed a motion to continue the trial in order to obtain the testimony of Dr. Berenholz via deposition. *Id*. at 89. The State noted that

the trial court granted the motion and rescheduled the trial to May 12, 2008, but Petitioner did not file his motion to take the deposition of Dr. Berenholz until April 28, 2008. *Id*. The State also pointed out that Dr. Berenholz was never subpoenaed even though it was claimed that he was a crucial witness for the defense, and Petitioner never provided the State with any documents regarding the testimony of Dr. Berenholz despite a discovery request filed on April 11, 2008. *Id*.

Discussion was had on the record before trial regarding this motion, with Petitioner, his counsel, the trial court, and the State. ECF Dkt. #9-2 at 322-327. In explaining its reasons for granting the State's motion to reconsider and thus denying Petitioner's motion to take and use the deposition of Dr. Berenholz because he was unavailable for trial, the trial court stated:

> THE COURT: Well, Mr. Gardner, you presented me in chambers with a letter from Mr. Berenholz dated April 1, 2008. He states in the third paragraph, "in light of his recent office visit and his history and examination at that time, I am not surprised he had difficulty performing the test asked of him. In conclusion, I think it is very possible that he was having some balance problems during the winter and spring and was scheduled for revision surgery of his left ear to correct this for him."
>
> Again, he states, "I do think that it is very possible that he was having balance problems." Now, "possible" is not the legal standard of care that would allow that witness to even express an opinion in court. Well, as you recall, I did note that to you in chambers when we talked, and you indicated to me that he would have an opinion that would comply with our legal threshold standards here in Common Pleas Court when he gave his deposition. I said fine, you could take a deposition.
>
> Now, the reason I granted the motion to reconsider is because the State of Ohio in their motion indicate that you had not provided Dr. Berenholz'[s] medical records prior to the scheduled deposition date. It's not fair to allege a defense and hire an expert witness to come in to court and not let the opposing side at least review the records which he bases his opinion. So that's why I granted the motion.

*Id.* at 327-329. When Petitioner's counsel indicated that the State never asked for any medical records, the court pointed to the State's standard demand for discovery dated April 11, 2008 which included requests for all results or reports of physical or mental examinations within the defense's possession or control and which intended to be introduced at trial or which was prepared by a witness that the defense intended to call at trial. *Id.* at 330. Petitioner's counsel indicated that this request had been received. *Id.* at 329.

-16-

The undersigned notes that Petitioner presented this claim before the Ohio appellate court solely as a matter of state law.  He cited to Ohio Criminal Rules 15 and 16 and Cuyahoga County Court of Common Pleas Local Rule 21 and contended that the trial court committed prejudicial error by prohibiting the deposition from going forward.  ECF Dkt. #1 at 28-31.  Before this Court, Petitioner merely states that "the trial court erred" in denying his "criminal rule 15 motion for deposition of his expert for use at trial."  *Id*. at 5.  Thus, Petitioner has not mentioned a violation of his federal constitutional rights at either the state intermediate appellate level or at the federal level.

" '[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' " *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.2004) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)).  Thus, a state prisoner must fairly present the substance of his federal constitutional claims to the state courts before seeking federal habeas corpus relief.  *Whiting v. Burt*, 395 F.3d 602, 612–13 (6th Cir.2005).  "A petitioner need not cite federal law 'book and verse' to fairly present a claim ..., but the factual and legal underpinnings of the claim must be presented as a federal claim to the state courts."  *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009)(citations omitted).  A petitioner can take one of four actions "which are significant to the determination of whether a claim has been 'fairly presented':

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Whiting*, 395 F.3d at 613 (citations omitted).  "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans v. Brigano* 228 F.3d 674, 681 (6th Cir.2000).

Petitioner for the first time mentioned the words "due process" in his delayed  appeal to the Supreme Court of Ohio.  ECF Dkt. #9-1 at 234.  He stated in his first proposition of law that "The

-17-

Appellant raised assignment of error No. 1 that the Trial Court erred in denying Appellant's criminal rule 15 motion for deposition of his expert for use at trial as part of his due process of law." *Id.* However, these general words are insufficient to constitute fair presentation and Petitioner merely reiterated the assertions made in his brief before the Ohio appellate court to support his proposition of law. *Id.* at 234-237.

Accordingly, the undersigned recommends that the Court find that Petitioner has waived review of this part of Ground for Relief Number 1. Petitioner presents no cause to excuse this failure and the record contains no such cause or a finding that a miscarriage of justice would result absent review of this claim in federal habeas corpus.

Moreover, "[f]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). To be entitled to relief in federal habeas corpus, a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir.1994). As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus. *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir.2000), cert. denied, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001). Under the AEDPA, states have wide latitude in ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir.2000), cert. denied, 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001). In considering Petitioner's habeas corpus petition, the Court may not grant the petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846 (6th Cir.2000).

Petitioner fails to cite to any federal constitutional right violated by the trial court's ruling on the State's motion for reconsideration which ultimately denied his Rule 15 motion. He also fails to cite any United States Supreme Court rulings on similar questions of law. Thus, Petitioner fails to establish the infringement of a right guaranteed under the United States Constitution.

-18-

And even if Petitioner's general assertion of a due process violation before the Supreme Court of Ohio would qualify, he fails to explain and the record does not show that the trial court's "evidentiary ruling is so egregious that it results in a denial of fundamental fairness" in order to assert a federal due process violation. *Fleming v. Metrish*, 556 F.3d 520, 534-535 (6th Cir. 2009). In explaining its decision to affirm the trial court's granting of the State's motion to reconsider, the Eighth District Court of Appeals provided the following analysis:

> Moats argues in his first assignment of error that the trial court erred in denying his Criminal Rule 15 motion for deposition of expert for use at trial. We do not find merit in his argument.
>
> Ohio Crim. R. 15, Deposition, provides the following:
>
>> "(A) When taken.
>> "If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure to justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place."
>
> In the case at bar, Moats filed a notice of deposition of his expert, Dr. Berenholz, on April 28, 2008. The State did not initially object to the taking of Dr. Berenholz's deposition and the trial court granted Moats's motion on April 30, 2008. The deposition was scheduled for Friday, May 9, 2008, three days before the May 12, 2008 trial. This was the third trial date.
>
> Earlier, on May 6, 2008, the State had filed a motion to reconsider the trial court's granting of Moats's motion to take deposition. The State argued that it filed the motion because Moats's defense counsel had failed to provide it with copies of the medical records that Dr. Berenholz intended to introduce at trial. The State also filed a motion to compel, requesting the lower court to order Moats to produce the medical records. The court granted the State's motion to reconsider and motion to compel on Thursday, May 8, 2008, the day before the scheduled deposition.
>
> The trial court stated that it granted the motion to reconsider because defense counsel had not provided Dr. Berenholz's medical records prior to the scheduled deposition date. The trial court provided additional guidance behind its ruling on the motion to reconsider in the record:

-19-

"Now, the reason I granted the motion to reconsider is because the State of Ohio in their motion indicate that you had not provided Dr. Berenholz'[s] medical records prior to the scheduled deposition date. It's not fair to allege a defense and hire an expert witness to come in to court and not let the opposing side at least review the records which he bases his opinion.  So that's why I granted the motion."[3]

3     Tr. 10.

In addition, the lower court stated that defense counsel had the medical records since the end of February 2008, but never turned them over.  Defense counsel erroneously claimed that he had no duty to turn over the discovery that the State requested.[4] Moreover, the court further stated that the expert witness letter, dated April 1, 2008, did not even rise to the level of certainty that would be necessary in order for the court to allow him to testify as an expert witness.  The court stated that "'Possibly' is very different than from 'a reasonable degree of medical certainty.'"[5]  The court went on to state, "You had time to correct it, yet you did not correct it.  And I don't have any assurances that it's correctable."[6].  Therefore, even if the deposition would have gone forward, Dr. Berenholz's opinion would not have met the standards of a reasonable degree of medical certainty.

4     Tr. 11.
5     Tr. 14.
6     Tr. 24.

Although the medical records in this case were ultimately produced, they were not produced until Thursday, May 8, 2008, the day before the scheduled deposition, and only after the court had granted the State's motion to reconsider and motion to compel.  The trial court has the power to exclude testimony of an expert for good cause.  Here, not providing the State with the medical records until compelled, and then only providing them the afternoon before the deposition, constituted good cause to exclude the testimony.

Accordingly, we find that the lower court did not err in denying Moats's Crim.R. 15 motion for deposition of his expert for use at trial.

ECF Dkt. #9-1 at 155-158.

-20-

For these reasons, the undersigned recommends that even if Petitioner had presented a federal due process claim, the Court should find no merit to the assertion because the Ohio appellate court's decision and the trial court's decision as to Petitioner's expert witness was not a ruling so egregious that fundamental fairness was denied.

### b.     Ineffective Assistance of Counsel

Petitioner also asserts in Ground for Relief Number 1 that his trial counsel was ineffective "where the court excluded his doctor's testimony." ECF Dkt. #1 at 5.  He attaches a copy of his appellate brief before the Eighth District Court of Appeals of Ohio, evidently incorporating the argument from that brief that his counsel was ineffective in failing to obtain the deposition or testimony of Dr. Berenholz.  ECF Dkt. #1 at 31-33.  Petitioner quotes the transcript regarding his counsel's failure to send the medical records of Dr. Berenholz to the State which ultimately resulted in the trial court reconsidering and reversing its decision allowing Dr. Berenholz's deposition to be taken. *Id.* at 32.  Petitioner asserts that this testimony was crucial because Dr. Berenholz would have offered expert medical testimony regarding medical conditions that Petitioner suffered which may have compromised his ability to perform the field sobriety tests. *Id.*

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id.* at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

The Supreme Court has recently observed that the standards in *Strickland* and Section 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington*, 131 S.Ct. at 788. Therefore, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Before the beginning of voir dire at the trial in the instant case, defense counsel indicated his belief that under Ohio Criminal Rule 16, if he did not file a request for discovery from the State, he was under no obligation to respond to any discovery requests by the prosecution. ECF Dkt. #9-2 at 326. Defense counsel indicated that the prosecution never asked for any medical records, but then admitted that he had received a standard discovery request from the prosecution which requested "all records that witnesses for the defense would be testifying to." *Id.* at 329. Counsel for Petitioner reiterated his belief that because he never requested discovery, he was not required to answer any discovery request. *Id.* at 329-330. The transcript regarding this issue reveals the following discussions between the trial court, Petitioner's counsel Mr. Gardner, and the prosecution, concerning the report of defense expert Dr. Berenholz, defense counsel's request for a continuance of trial, and the denial of defense counsel's request to withdraw from the case:

> THE COURT:    Let us all save some time. Here's their demand for discovery, the State's, it's dated April 11, 2008. The second paragraph of the items they want, "2, All results or reports of physical or mental examinations and of scientific tests or experiments in connection with this case, or copies thereof, available to or within the possession or control of the defendant, and which the defendant intends to introduce in evidence at the trial, or

-22-

which was prepared by a witness whom the defendant intends to call at the time of the trial, when such results or reports relate to his testimony."

That information is clearly set out.  The medical records of Dr. Berenholz clearly comes under that second paragraph as requested material. So they asked for it, they didn't get it. Hence, you guys didn't drive to Youngstown on Friday for the deposition of Dr. Berenholz.  Anything else before we call a jury?

MR. GARDNER:        No, Your Honor.  We object to going forward without a crucial necessary witness for the defense and one that we can have within two weeks from today.

THE COURT:        The only reason you are not going forward with your witness is because you didn't send the medical records in advance.

MR. GARDNER:        If that's the case, Your Honor, I would - - obviously the Court's indicating that it's ineffective assistance of counsel and my client should not suffer for what is my failure.  The Court is identifying my performance as subpar, and my client has nothing to do with what the Court's describing as my failure, even though I'm not required to, under Criminal Rule 16, send it to the government.

If the Court is saying that it recognizes the failure to do so as my failure, my client should not be penalized with this by going to trial with the necessary witness not here. If the Court would like me to recuse or ask to withdraw from the case so that my client can then obtain counsel that will provide him with the effective assistance that he needs, I'm asking the Court to do that because my client cannot and should not be going forward without a crucial witness due to what the Court is saying is my error, not his.

THE COURT:        Mr. Gardner, how does the Court know that Dr. Berenholz is even going to give an opinion within a reasonable degree of medical certainty when you haven't even provided a report with those magic words?

MR.GARDNER:        The words were very clear enough within that.  Now maybe it's not for - -

THE COURT:        Maybe, Mr. Gardner?  "Possibly" is very different than from a  "reasonable degree of medical certainty."

-23-

MR. GARDNER:    It was enough the Court at the time in chambers to say, fine, you can have your deposition, and was also enough for the Court to grant my motion at the time to have a deposition of Dr. Berenholz.

                The Court's now clearly indicating it's not enough, after twice saying that it was enough. The very clear implication of what the doctor was saying would provide a clear defense for Mr. Moats in this case.

                Again, if the Court is saying that I am deficient, then I'm asking the Court for permission to withdraw from this case rather than going forward in an unprepared fashion that would affect my client's rights.

THE COURT:      Okay. Mr. Gardner, I'm not here to make the ruling that you want. That's for the Court of Appeals to do so, or possibly a grievance committee.

                So I'm still ready to go forward with this trial. Are you?

MR. GARDNER:    No, Your Honor. I'm not. I am definitely not ready. It would essentially amount to a deprivation of my client's due process rights and Sixth Amendment Rights to have unprepared counsel going forward. The Court at the last minute issued an order that canceled a deposition that we were relying upon for our defense. We didn't have 24-hours notice of cancellation. We barely had 15-hours notice of cancellation. We need Dr. Berenholz. He provides crucial evidence for the defendant. We can have him here within two weeks and we ask the Court to grant a continuance to the 27th. I have been in contact with his office manager and she says that he will be here on the 27th.

THE COURT:      How long have you had the medical records in your possession, Mr. Gardner?

MR. GARDNER:    The end of February, Your Honor.

THE COURT:      The State's discovery request was April 11th.

MR. GARDNER:    Your Honor, no matter how many times the Court says the State's discovery request, the law says that I have no - -

THE COURT:      Mr. Gardner, you think the law says that. You're the only one in the room who says that the law allows you to ambush your

-24-

|  | opponent.  Do you want me to pull out Local Rule 21 and show it to you?  You are not familiar with Local Rule 21 and disclosure of expert reports? |
|---|---|
| MR. GARDNER: | I am not, your Honor, but the expert report that was - - |
| THE COURT: | Show me where the spirit of the law allows you to do what you want to do?  I gave you a break and ordered that the State travel to Youngstown to take the deposition of your client, or your expert witness, whose letter only talks about in terms of possibilities and not probabilities.  And what do you do?  You turn around and slam the door on the State's request for discovery, because you think the rules allow you to behave that way.  That doesn't mean they do. |
| MR. GARDNER: | And if the Court - - |
| THE COURT: | You painted yourself in a rather uncomfortable position. |
| MR. GARDNER: | Your Honor, if the Court is saying I have done that, then again I ask the Court whether it wants to sanction me by filing a grievance, or I'm asking the Court to be excused from this case, because for me to proceed without this Dr. Berenholz would be, it would deprive my client of effective assistance of counsel and his due process rights. |
| THE COURT: | Rather then being an interruption of the administration of justice, which is rather contemptible. |
| MR. GARDNER: | Then the Court has the right to find me in contempt. |
| THE COURT: | I'm going - - Are you going to give your client his money back? |
| MR. GARDNER: | If it is required.  Without hesitation. |
| THE COURT: | If that's what required.  It's just showing that you do nothing voluntarily until it's ordered by the Court, whether it be discovery or doing the right thing in the representation of your client. |
| MR. GARDNER: | No, Your Honor.  It's not from the Court, it's from my client, it's from a discussion with my client.  That's what I was talking about. |

-25-

THE COURT:        Why don't' you take a moment and go talk to your client.  I'll give you five minutes.

MR. GARDNER:      Thank you, Your Honor.

(Thereupon, a recess was had.)

MR. GARDNER:      Your Honor, I've spoken with my client and if he's being forced between the choice of keeping me on as an attorney and going to trial today without Dr. Berenholz versus letting me go  as his attorney and having the time to bring in Dr. Berenholz with a different attorney, then that's the choice he's making, the latter of the two.

THE COURT:        He wants to get another attorney?

MR. GARDNER:      If that's the only way that he can ensure that Dr. Berenholz can testify.  He wants to keep me on as his attorney and he's hoping that we can reconvene on the 27th and go forward on the 27th with me as his attorney and Dr. Berenholz on the witness stand, but if the Court is not giving him the option of that two weeks so that he can have Dr. Berenholz here and me as his attorney, he understands that Dr. Berenholz is crucial to his defense.

THE COURT:        This is the third trial date, Mr. Gardner.  You weren't ready for the first one with Dr. Berenholz, you are not ready for this one.  I don't have any reason to believe that Dr. Berenholz is ever, ever going to be available to try this case.

MR. GARDNER:      I have spoken to his office and I have a commitment.

THE COURT:        You know, I don't' have - - Mr. Gardner, I don't have a lot of faith in your word either at this point.  We're going to take a five-minute break.

(Thereupon, a recess was taken.)

THE COURT:        All right.  Be seated.  Peggy, good morning again.

be

                  Okay.  The Court's considered this issue.  Criminal Rule 15, I do note as an aside, that it states, quote, "Depositions shall taken in the manner provided in civil cases. The prosecutor and the defense shall have the right, as at trial, to full examination of witnesses.  A deposition taken under this rule shall be filed in the court in which the action is pending."

-26-

It's an area where we have a blending of civil and criminal rules.  And Civil Rule 16 deals with pretrial procedure, and Civil Rule 16 is noted in local Rule 21.1.  And 21.1 deals with expert witnesses at trial.

Do you have any new reports from this Dr. Berenholz, Mr. Gardner?

MR. GARDNER:        Your Honor, all documents that I received from Dr. Berenholz I provided over to the prosecution on Thursday when I received them.

THE COURT:          Mr. Gardner, I asked you a different question.  I asked you if you have a new report from Dr. Berenholz that speaks in terms of medical probability and not possibility?

MR. GARDNER:        No, Your Honor.  That was the only opinion piece that I received from Dr. Berenholz. Everything else was Mr. Moats' medical records from Dr. Bereholz'[sic] office.  The only document that speaks to an opinion of the doctor was attached to the motion that the Court saw in chambers on the 16th.

THE COURT:          And you're calling him to give expert testimony, correct?

MR. GARDNER:        Yes, Your Honor.

THE COURT:          Expert testimony that your client has a medical condition that could explain his behavior on the police dashcam video in this case, correct?

MR. GARDNER:        That's depicted on the police dashcam, Your Honor.  He would explain it and explain why these tests that the officer actually gave him, that form the basis of the officer's opinion, are unreliable and never should have been given to somebody with Mr. Moats' medical conditions.

THE COURT:          Okay.  Well, that's not what he says in his report.

MR. GARDNER:        That is the essence of what he would testify to, your Honor.

THE COURT:          Well, that's not in his report at all.

-27-

MR. GARDNER:      Your Honor - -

THE COURT:      I'll read the whole report in the record so anyone reviewing this case can clearly see what Dr. Berenholz has to say.  This letter is dated April 1, 2008 to Mark Gardner.

"Dear Attorney Gardner: Thank you for your recent letter regarding Charles Moats.  I reviewed the video regarding his arrest by police for possible DUI.  "I last saw Mr. Moats on February 26th, 2008.  He is a well-known patient to our office with what I would describe as severe chronic ear disease in both ears.  I performed a revision mastoidectomy," m-a-s-t-o-i-d-e-c-t-o-m-y, "in 2005 with reconstruction in 2006.  That ear has been stable.  On his last visit he reported to me that he has been having dizziness and disequilibrium, even falling in prior months to our visit on 2/26/08.  During that examination it appears that he has recurrent," I'll just spell it, c-h-o-l-e-s-t-e-a-t-o-m-a "in the left ear, which is an inflammatory cyst.  CT scan confirmed that there might be a cholesteatoma of the left ear and there might even be an opening in the balance canal, specifically the horizontal canal.  When I palpated a prior prothesis that was placed about 15 years ago, he did have significant dizziness and he was scheduled for surgery for this problem."

Next paragraph, "In light of his recent office visit and his history and examination at that time, I am not surprised that he had difficulty performing the test asked of him.  In conclusion, I do think it is very possible that he was having balance problems during the winter and spring and was scheduled for revision surgery of his left ear to correct this for him.  He has no insurance unfortunately, so he had to cancel the procedure.  We are waiting to hear from him regarding rescheduling the surgery."

"Please feel free to contact me with any questions or concerns."

Now, he notes in the letter that he reviewed the video regarding your request.  He doesn't indicate that his behavior was due to inner ear problems.  He states, quote, "I do think it is very possible that he was having balance problems during the winter and spring."  Having balance problems and explaining the behavior on the video are two different things, and that's what he's being called for.

Mr. Gardner, I could give you a continuance for three months, but given this letter, which does not state anything that would be admissible in a court of law, this Court has no assurance that you would have a witness who would be able to provide

-28-

|   | any kind of testimony on behalf of Mr. Moats at any time. This letter was written six weeks ago.  You indicated in chambers to us that - - and I indicated - - that was a month ago - - that this would not be admissible testimony.  You had time to correct it, yet you did not correct it.  And I don't have any assurance that it's correctable. |
|---|---|
|   | So we're going to go forward with trial and Dr. Berenholz is not going to be a witness. |
| MR. GARDNER: | Your Honor, I would ask the Court then to release me from this case, because the Court's indicating that I have failed my client to prepare properly for this.  And Mr. Moats should not have to suffer from my failure in this regard.  I've spoken to Mr. Moats, and Mr. Moats is in agreement that if forced to go forward today without Dr. Berenholz because of my failure to properly get a correct letter from Dr. Berenholz or have the deposition of him, that he would like to fire me as his attorney in this matter and hire different counsel with the refund, Your Honor. |
| THE COURT: | Well, Mr. Gardner, again, we don't know that you failed your client.  If Dr. Berenholz would have given a proper record, or that would have been a proper part of the report, maybe you would have failed your client, but we don't know what Dr. Berenholz would have testified to.  The record doesn't show what Dr. Berenholz is going to testify to.  So no one can say that you failed, and that's not going to be a reason for a continuance at this time.  We're calling a jury up. |

ECF Dkt. #9-2 at 330-343.

In addressing Petitioner's appellate assertion of ineffective assistance of counsel as to the exclusion of Dr. Berenholz's deposition and testimony, the Ohio appellate court applied the *Strickland* standard and found that counsel's decisions were "well within the ambit of debatable trial tactics" and were "valid and proper strategic decisions in regard to their client's welfare."  ECF Dkt. #9-1 at 162.  The appellate court reviewed the trial court's granting of defense counsel's motion to take the deposition of Dr. Berenholz and its subsequent granting of the State's motion to reconsider its granting of defense counsel's motion.  *Id.* at 160.  The Ohio appellate court also cited parts of the trial transcript quoted above and the following portion as well:

| THE COURT: | She [the prosecutor] alleged in her brief that she filed a demand for discovery on April 11th. |
|---|---|

-29-

MS. KOWALSKI;    Yes, Your Honor, we did file a demand for discovery on April 11th.

THE COURT:    And I assume that demand for discovery encompassed the medical records?

MR. GARDNER:    Judge, if I may correct myself.  Yes, we did receive that.  I did receive that from the prosecution, the standard discovery request.

The appellate court found that:

> [I]t was defense counsel's tactical decision not to turn over Moats's medical records that were used by an expert witness during a deposition.  This was not a substantial violation of defense counsel's duties to his client as counsel had a strategy in mind when preparing for trial that did not include allowing the State to see defense counsel's evidence.  The lower court soundly rejected Moats's argument that he should be allowed to have his expert testify by deposition.  The lower court rejected Moats's argument because he failed to produce the medical records and failed to provide the lower court with any evidence that his expert's opinion would have risen to the level of a "medical degree of certainty" necessary for Dr. Berenholz's testimony to be admissible at trial.  Accordingly, we find no evidence of ineffective assistance of counsel on the part of Moats's trial counsel.

ECF Dkt. #9-1 at 161-162.

The Court should find that the Ohio appellate court's conclusions were reasonable, especially with regard to the prejudice prong of the *Strickland* analysis.  Petitioner presents no argument as to why the appellate court's conclusions were unreasonable.  Further, even if trial counsel lacked sound trial strategy in failing to disclose the medical records, the Ohio appellate court reasonably found that *Strickland's* prejudice prong was not met because Dr. Berenholz's report did not meet the "reasonable degree of medical certainty" standard required in order for him to even be qualified as an expert witness.  *Id*.  While any error in failing to hand over the requisite medical records may have "had some conceivable effect on the outcome of the proceeding," *Strickland* requires more.  *Strickland* requires that counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

The undersigned recommends that the Court find that no such serious error occurred here in light of the questions regarding the admissibility of Dr. Berenholz's report and the other evidence

presented at trial through the testimony of a witness and the police officers on the scene.  A store clerk testified that he observed Petitioner and his passenger as "unbalanced" and "red in the face" and he called police when customers asked him to do something about Petitioner and his passenger's behavior.  ECF Dkt. #9-2 at 461-466.  A police officer called to the scene testified that he observed Petitioner pull his vehicle directly out in front of another car and cross over three lanes of traffic before drifting back to the curb lane.  ECF Dkt. #9-3 at 531-534.  The officer further testified that when he pulled Petitioner's vehicle over, he smelled a very strong smell of alcohol coming from the car, he observed that Petitioner's eyes were very bloodshot and glassy, Petitioner's actions were delayed, and Petitioner spoke with slurred speech.  ECF Dkt. #9-3 at 531-534, 610.  The officer also observed a urine stain on Petitioner's pants when he performed the field sobriety tests and he testified that Petitioner did not indicate that he had any physical limitation in performing the one-legged stand field sobriety test until after he failed the test.  *Id*. at 549, 591.  The police officer also indicated that he observed six clues from Petitioner on the horizontal nystagmus test when only four clues were necessary to determine alcohol impairment and it was his opinion, based upon his training and experience as a police officer, that Petitioner was under the influence of drugs or alcohol.  *Id*. at 537-545; 606.  The arresting officer and another officer also testified as to Petitioner's refusal to perform a breath test.  ECF Dkt. #9-2 at 487; ECF Dkt. #9-3 at 553-555.

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's ineffective assistance of counsel claim.

### 2.      Ground for Relief Number 1 and Ground for Relief Number 3 – Sufficiency of the Evidence

In Ground for Relief Number 1 and Ground for Relief Number 3, Petitioner asserts that insufficient evidence was presented to support his convictions.  ECF Dkt. #1 at 5, 8.  For the following reasons, the undersigned recommends that the Court find that the state appellate court's determination was not contrary to or an unreasonable application of United States Supreme Court law and did not result in a decision based upon an unreasonable determination of facts in light of the evidence presented at the state court proceeding.

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970).  On federal habeas corpus review, the District Court cannot weigh the credibility of the witnesses.  *Walker v. Engle*, 703 F.2d 959, 969.  Nor is the District Court permitted to overturn a conviction merely because it would have acquitted had it acted as the finder of fact.  *Brown v. Davi*s, 752 F.2d 1142, 1147 (6th Cir. 1985), *and Walker,* 703 F.2d at 969.  In order to establish an insufficiency of the evidence claim, the relevant inquiry is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000), *quoting Jackson,* 443 U.S. at 319. The inquiry is not whether the trier of fact made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict.  *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  Moreover, in determining whether the state court's determination was objectively unreasonable, the Court must first determine whether the evidence was sufficient to convict under *Jackson*.  *See Pinchon v. Myers*, 615 F.3d 631, 643 (6th Cir. 2010).  If sufficient evidence exists with which to convict, the inquiry ends.  *Id.*  If the Court finds that the evidence is insufficient to convict, then it must apply the AEDPA deference standard and determine whether the Ohio appellate court's determination as to the trial court's verdict was "objectively unreasonable" in concluding to the contrary, keeping in mind that it is looked at "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.,* quoting *Tucker v. Palmer,* 615 F.3d 631, citing *Jackson*, 443 U.S. at 319.

In the instant case, the Ohio appellate court outlined the pertinent state law and evidence and reasonably concluded that sufficient evidence was presented to prove that Petitioner was guilty beyond a reasonable doubt of driving under the influence of alcohol.

-32-

The Ohio appellate court overruled Moats' claims that the trial court erred in granting his Ohio Criminal Rule 29(A) motion for acquittal because the evidence was not sufficient to support his convictions, holding:

> Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal *** if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. The Supreme Court has determined that, in essence, sufficiency is a test of adequacy. *State v. Robinson* (1955), 162 Ohio St. 486, 124 N.E.2d 148. *Also see, State v. Sutton*, Cuyahoga App. No. 90172, 2008 Ohio 3677.
>
> *      *      *
>
> The record in the case at bar verifies that significant evidence was presented at the trial court. More specifically, Moats argues that the State's witness observed Moats almost entirely while he was not driving and Moats also argues that the testing and observations done by the police were not performed correctly; and that the observations and tests were invalid. However, he only makes bare assertions or claims of error on the part of the police. Moats fails to present any evidence to support these bare assertions.
>
> The evidence in the record does not support Moats's claims of error. Here, Patrolman Alameda performed the Horizontal Gaze Nystagmus (HGN) test and observed six indicators that Moats was suffering from alcohol impairment. Only four indicators are necessary to determine alcohol impairment. Moats was also given the one-legged stand field sobriety test. He did not tell the officer that he had any limitations that would prevent him from completing the test until after he failed the test. During the one-legged stand, the officer observed Moats swaying, putting down his foot multiple times, and raising his arms from the sides more than six inches, all of which are indicators for impairment. Patrolman Alameda also observed a urine stain on Moats's pants at the time he was being tested.
>
> Moats was also given the finger-to-nose test. Moats was unbalanced and unable to complete the test because police feared he would fall face first in the parking lot, as evidenced by the dashcam video and testimony given. In addition to the video, Patrolman Alameda testified that based on his education, training, and experience Moats was under the influence of alcohol or drugs at the time of testing.
>
> After Moats failed the field sobriety tests, he was arrested and taken to the police station so that a blood alcohol (breath test) could be conducted. However, when Patrolman Meyerholtz attempted to administer the test, Moats refused. The State submitted its exhibit two, which documented Moats's refusal. Patrolman Meyerholtz testified that he observed Moats to be sleepy, lethargic, and not really coherent.

> Accordingly, based on the evidence in the record we find Moats's convictions to be proper. Moreover, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

ECF Dkt. #9-1 at 163-167.

Based upon a review of the trial transcript, as recited by the Ohio appellate court, the undersigned recommends that the Court find that the Ohio appellate court's decision is supported in the record. Evidence was presented such that a rational trier of fact could find that Petitioner was under the influence of alcohol while operating a vehicle.  While Petitioner may argue that his performance on the field sobriety tests was impacted by his medical condition, he cannot assert that his medical condition impacted the arresting officer's observation of a very strong smell of alcohol, Petitioner's very bloodshot and glassy eyes, his delayed reactions to instructions, and Petitioner's slurred speech.  ECF Dkt. #9-3 at 531-534, 610.  The officer also observed a urine stain on Petitioner's pants when he performed the field sobriety tests and he testified that Petitioner did not indicate that he had any physical limitation in performing the one-legged stand field sobriety test until after he failed the test. *Id.* at 549, 591.  The police officer also indicated that he observed six clues on the horizontal nystagmus test when only four clues were necessary to determine alcohol impairment and the officer testified that in his opinion, based upon his training and experience as a police officer, that Petitioner was under the influence of alcohol.  *Id.* at 537-545; 606.  The arresting officer and another officer also testified as to Petitioner's refusal to perform a breath test.  ECF Dkt. #9-2 at 487; ECF Dkt. #9-3 at 553-555.

Accordingly, the undersigned recommends that the Court find that the appellate court's decision finding a sufficiency of the evidence was neither contrary to or an unreasonable application of federal law.

**VII.**    **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: September 28, 2012                          _/s/ George J. Limbert_
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).